UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHEILA MCINTOSH,

Plaintiff,

v.

MICHAEL CULLETON, et al.,

Defendants.

Case No. 26-cv-01374-AGT

**ORDER ON MOTION TO DISMISS**

Re: Dkt. No. 11

In February 2026, Sheila McIntosh initiated this lawsuit against her former financial advisor, Michael Culleton, and his employer, Morgan Stanley Smith Barney. She brings claims of professional negligence and breach of fiduciary duty.

Defendants have moved to dismiss the claims as time-barred. "A statute-of-limitations defense . . . may properly be raised in a motion to dismiss" if the defense is "apparent from the face of the complaint." *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (citation modified). Here, the success of the defense is not apparent from the complaint, so the Court denies Defendants' motion.

## I.   BACKGROUND

McIntosh alleges the following facts in support of her claims. The Court accepts these allegations as true at the pleading stage. *Retail Prop. Tr. v. United Blvd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

In 1999, McIntosh's grandmother opened an account for her at Morgan Stanley. Dkt. 1, Compl. ¶¶ 9–10. At the time, McIntosh was in her twenties and had no knowledge of finance or investments. *Id*. ¶ 9. Her grandmother deposited $10,000 per year into the account until she passed away in 2010. *Id*. ¶ 10. McIntosh's father then began depositing $10,000 annually. *Id*. In 2001, Culleton became the financial advisor for McIntosh's account. *Id*. He remained the sole advisor until McIntosh closed her account in September 2021. *Id*.

In September 2021, McIntosh moved her account from Morgan Stanley to Fidelity after her brother mentioned that "he had moved his account because he did not want to pay [Morgan Stanley's] fees." *Id*. ¶ 13. McIntosh kept her assets in the same investments and allocations that they had been in at Morgan Stanley. *Id*.

In or around August 2025, McIntosh began taking personal finance classes. *Id*. ¶ 14. In her classes, she "learned about how much money should grow when invested in the markets," and about "the expense ratios associated with actively managed mutual funds." *Id*. These classes caused her to wonder why her account at Morgan Stanley had not grown more. *Id*. She had not questioned her account growth before because her Morgan Stanley account "had not declined in value and appeared to have grown a little bit." *Id*.

McIntosh contacted Morgan Stanley in August 2025 to request her historical statements, which "she did not have." *Id*. ¶ 15. After receiving many of her account statements, she learned that the fee structure and Culleton's investment decisions were contrary to her best interests and had resulted in under-performance relative to the market. *Id*. ¶¶ 15–19.

McIntosh filed her complaint against Culleton and Morgan Stanley on February 17, 2026, asserting claims of professional negligence and breach of fiduciary duty. Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

A defendant may raise a statute of limitations defense on a Rule 12(b)(6) motion to dismiss if the running of the statute is "apparent on the face of the complaint." *Seven Arts*, 733 F.3d at 1254 (quoting another source). In evaluating the motion, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop.*, 768 F.3d at 945.

## III. DISCUSSION

Defendants assert that the statute of limitations began to run, at the latest, when McIntosh closed her Morgan Stanley account in September 2021. She was aware of the facts of injury by then, they assert, even if she did not know the full extent of her damages. Dkt. 11 at 9–10. To support their position, Defendants rely on a declaration signed by Defendant Culleton. Therein, he states that Morgan Stanley sent McIntosh account statements each month while her account remained open. Dkt. 11-1, Culleton Decl. ¶ 8. Defendants also rely on three exhibits to Culleton's declaration: McIntosh's 2006 Account Application, her Client Agreement, and her September 2021 account statement. *See* Dkt. 11-2 to -4.

McIntosh counters that the limitations period began to run only when she discovered the alleged wrongdoing in or around August 2025. Dkt. 16 at 7. She contends that she did not have her account statements in September 2021, and that the Court shouldn't consider Culleton's declaration and its exhibits because they are outside the pleadings. *Id*. at 8–12.

The Court begins by considering whether it can rely upon Culleton's declaration and the exhibits thereto. The Court will then turn to the limitations defense.

### A.    Considering Documents Outside the Pleadings

Generally, courts may not consider matters outside the pleadings when ruling on a

3

Rule 12(b)(6) motion to dismiss. *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011). The "two exceptions to this rule" are "the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

The Court may judicially notice a fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

A defendant may seek to incorporate a document into the complaint by reference "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja*, 899 F.3d at 1002 (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). The incorporation-by-reference doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id*. And yet a complaint's "mere mention of the existence of a document is insufficient to incorporate [its] contents." *Id*. (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).

Applying these standards, the Court concludes that it cannot judicially notice or incorporate by reference Culleton's declaration or its exhibits.

### 1.    Culleton's Declaration

First, the Court cannot judicially notice Culleton's declaration. Culleton's testimonial assertions (e.g., that Morgan Stanley sent McIntosh monthly account statements) are not facts "generally known within the trial court's territorial jurisdiction" or that "can be accurately and readily determined from sources whose accuracy cannot reasonably be

questioned." Fed. R. Evid. 201(b). Sources whose "accuracy cannot reasonably be questioned" (*id.*) include judicial records or "an almanac, dictionary, calendar, or other similar source." *Wayne v. Leal*, 2009 WL 2406299, at *4 (S.D. Cal. Aug. 4, 2009). Culleton is the source of the information in his declaration. He is a defendant, and the accuracy of his testimony *can* reasonably be questioned. The Court cannot judicially notice facts he advances.

Second, Defendants cannot incorporate Culleton's declaration into the complaint. Culleton signed and filed his declaration two months after McIntosh filed her complaint. *See* Dkt. 1; 11-1 at 3. Given that the declaration didn't exist when McIntosh filed her complaint, it clearly isn't a document that the complaint "refers extensively to" or that "forms the basis of the plaintiff's claim." *Khoja*, 899 F.3d at 1002 (quoting *Ritchie*, 342 F.3d at 907).

### 2.    Account Application, Client Agreement, September 2021 Statement

The exhibits to Culleton's declaration—the Account Application, the Client Agreement, and the September 2021 account statement—also cannot be judicially noticed. The information appearing in those documents (e.g., details about McIntosh's Morgan Stanley account and her investments therein) is not "generally known within the trial court's territorial jurisdiction;" and the documents themselves are not "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Defendants don't suggest otherwise. Indeed, although they do request that the Court judicially notice these documents, they offer no explanation of why the Court should do so and instead focus on the incorporation-by-reference doctrine. *See* Dkt. 12 at 2–3.

But the exhibits to Culleton's declaration cannot be incorporated by reference, either. McIntosh does not "refer[] extensively" to these documents in her complaint. *Khoja*, 899 F.3d at 1002 (quoting *Ritchie*, 342 F.3d at 907). She references account statements only

once, and even then the reference isn't specifically to the September 2021 account statement. *See* Compl. ¶ 15 ("Plaintiff therefore contacted [Morgan Stanley's] client services department in late August of 2025 to request her historical statements . . . because she did not have them."). As for the Account Application and Client Agreement, the complaint possibly mentions them once, referring to McIntosh's "new account paperwork with [Morgan Stanley]." *Id.* ¶ 11. But one reference does not constitute an "extensive[]" reference. *Khoja*, 899 F.3d at 1002 (quoting *Ritchie*, 342 F.3d at 907). "For 'extensively' to mean anything . . . , it should, ordinarily at least, mean more than once." *Id.* at 1003.

McIntosh does not "refer[] extensively" to the September 2021 account statement, the Account Application, or the Client Agreement, and none of these documents "forms the basis of" her claims. *Id*. at 1002 (quoting *Ritchie*, 342 F.3d at 907). McIntosh does not suggest that Defendants breached the Client Agreement. She alleges that Defendants breached their fiduciary duties and committed professional negligence by, *inter alia*, "charging . . . advisory fees for their services despite doing little to no trading," and concentrating her accounts "in cash and cash equivalents despite [her] goal of investing the funds in those accounts to grow for her retirement." Compl. ¶ 27.B, C; *see also id*. ¶ 40.D. Neither the Account Application nor the Client Agreement forms the basis of these claims.

As for the September 2021 monthly account statement, although it lists certain financial holdings, transactions, and fees that McIntosh challenges, it is the underlying holdings, transactions, and fees that form the basis of McIntosh's claims, not the account statement itself. Internal Morgan Stanley documents, other monthly account statements, or both may reveal the same holdings, transactions, and fees. McIntosh won't necessarily need to rely on the September 2021 account statement to prove her claims, and she clearly doesn't do so in

her complaint. The September 2021 account statement doesn't form the basis of her claims.

Moreover, even if the September 2021 account statement could be incorporated by reference, the Court would not be able to draw the inferences from it that Defendants propose. *See Khoja*, 899 F.3d at 1003 (cautioning courts to "approach[] with caution" the "inferences [they] . . . draw from an incorporated document"). Defendants assert that the account statement "put [McIntosh] on inquiry notice of her alleged injuries . . . before October 1, 2021." Dkt. 17 at 6. To make that connection, however, Defendants need to establish that McIntosh *received* the account statement in or around September 2021, which they haven't done. McIntosh doesn't allege that she received the September 2021 account statement at any time. And to prove otherwise, Defendants rely on Culleton's declaration, which, as explained above, the Court cannot consider on a motion to dismiss.

The Court will not judicially notice or incorporate by reference the Account Application, the Client Agreement, or the September 2021 account statement. And even if the Court were to incorporate by reference the September 2021 account statement, the Court couldn't consider it as evidence of inquiry notice—the basis for which Defendants have offered it—because the statement itself doesn't prove when or that McIntosh received it.

## B.    The Applicable Statute of Limitations

The statute of limitations for professional negligence is generally two years. *Thomson v. Canyon*, 198 Cal. App. 4th 594, 606 (2011). For a breach of fiduciary duty claim, the limitations period is three years if the alleged breach is fraudulent and four years if not. *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1479 (2014).

The parties disagree about whether the two-year or four-year limitations period applies, with Defendants advocating for the shorter period and McIntosh for the longer. The

Court need not determine which limitations period is appropriate at this time.

In moving to dismiss, Defendants assert that McIntosh's claims are untimely because McIntosh had all the facts of alleged wrongdoing by the time she closed her Morgan Stanley account in September 2021, more than four years before she filed her complaint in February 2026. In contrast, McIntosh argues that the statute of limitations did not begin to run until she became aware of the alleged wrongdoing in or around August 2025, less than two years before she filed her complaint.

Because Defendants contend that McIntosh's claims are untimely even under the four-year limitations period and McIntosh asserts that her claims are timely even under the two-year limitations period, the dispositive question at this stage isn't whether the limitations period is two or four years, but whether it started running in September 2021 or August 2025.

## C.    Running of the Statute of Limitations

McIntosh alleges that Defendants were her investment advisors. *E.g.*, Compl. ¶¶ 10, 21. "The investment adviser/client relationship . . . giv[es] rise to a fiduciary duty as a matter of law." *Hasso v. Hapke*, 227 Cal. App. 4th 107, 140 (2014).

"Where a fiduciary obligation is present, [California] courts have recognized a postponement of the accrual of the cause of action until the beneficiary has knowledge or notice of the act constituting a breach of fidelity." *Eisenbaum v. W. Energy Res., Inc.*, 218 Cal. App. 3d 314, 324 (1990). The plaintiff's duty or inquiry "is reduced;" she "is entitled to rely on the statements and advice provided by the fiduciary." *Id*. (quoting another source). "However, once a plaintiff becomes *aware* of facts which would make a reasonably prudent person suspicious, the duty to investigate arises and the plaintiff may then be charged with knowledge of the facts which would have been discovered by such an investigation." *Hobbs*

*v. Bateman Eichler, Hill Richards, Inc.*, 164 Cal. App. 3d 174, 202 (1985).

Defendants assert that McIntosh's duty to investigate arose in September 2021, at the latest, when she moved her assets from Morgan Stanley to Fidelity. Although McIntosh alleges that she "did not realize or believe at that time that Culleton had mismanaged her account," Compl. ¶ 13 (select capitalization omitted), Defendants insist that she should have had a suspicion of wrongdoing, if in fact there was any wrongdoing, because they sent her account statements each month that revealed her account's performance. Dkt. 11 at 10.

McIntosh disputes that the account statements alone could have triggered a duty to investigate. Because Culleton was a fiduciary, she maintains that she reasonably relied on his expertise and wasn't obligated to look for signs of mismanagement in account statements. Dkt. 16 at 14–15. But even if account statements could have triggered a duty to investigate, McIntosh contends that such a duty didn't arise in September 2021 because she didn't have account statements at that time. *Id.* at 8. Not until she started taking personal finance classes, in or around August 2025, did she "contact[] [Morgan Stanley's] client services department . . . to request her historical statements." Compl. ¶ 15.

At the pleading stage, and based only on what's alleged in the complaint, McIntosh has the better position. She didn't have her account statements until Morgan Stanley provided them in or around August 2025, after she asked for them. *Id.* The account statements, then, did not put her on notice of wrongdoing back in September 2021, as Defendants claim.

Defendants ask the Court to infer that McIntosh *did* receive her account statements each month while her Morgan Stanley account was still open. In her complaint, Defendants note, McIntosh alleges only that she "did not have" her account statements in August 2025, not that she did not *receive* them each month while her account was still open. *See* Dkt. 17

at 8 ("Non-possession . . . is not the same as non-receipt.").

On a motion to dismiss, the Court cannot accept this defense-favorable inference. The Court must draw all reasonable inferences in McIntosh's favor. *Retail Prop.*, 768 F.3d at 945. One such plaintiff-favorable inference is this: because McIntosh does *not* allege that she received her account statements each month and *does* allege that she did not have her account statements in 2025, Morgan Stanley did not send her account statements each month. At the pleading stage, the Court accepts that inference as plausible.

Defendants base their statute-of-limitations defense on their assertion that McIntosh received monthly account statements, and that those statements put McIntosh on notice of the alleged wrongdoing at least by September 2021. But because McIntosh alleges that she "did not have" the account statements until she asked Morgan Stanley for them in August 2025, Compl. ¶ 15, Defendants cannot rely on the statements to demonstrate that McIntosh had notice of the alleged misconduct in 2021.

McIntosh has plausibly alleged that the limitations period did not begin to run until she received her account statements in August 2025.

## IV. CONCLUSION

Defendants moved to dismiss based only on their contention that McIntosh's claims are time-barred. The success of Defendants' statute-of-limitations defense isn't apparent from the face of the complaint. *Seven Arts*, 733 F.3d at 1254. Instead, Defendants rely upon evidence outside the compliant that the Court cannot consider at the pleading stage. When the allegations in McIntosh's complaint are taken as true and favorable to her, as they must be on a Rule 12(b)(6) motion, McIntosh's claims are not clearly time-barred.

The Court accordingly denies Defendants' motion to dismiss. Defendants must

answer the complaint by July 9, 2026. The initial case management conference is advanced to July 24, 2026. The parties must file a joint case management statement by July 17, 2026.

**IT IS SO ORDERED.**

Dated: June 24, 2026

_____

Alex G. Tse
United States Magistrate Judge